IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO CAMPER'S ASSOCIATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| | ) Civil No. 97-1493 |
| | ) (JAG/GAG) |
| PUERTO RICO AQUEDUCT AND | ) Consent Decree |
| SEWER AUTHORITY, | ) |
| | ) |
| Defendant. | ) |

## **CONSENT DECREE**

# TABLE OF CONTENTS

I. Jurisdiction ........ 1

II. Parties Bound ........ 1

III. Application and Binding Effect ........ 2

IV. Definitions ........ 3

V. Requirements ........ 5

VI. Enforcement ........ 9

VI. Force Majeure ........ 10

VII. Stipulated Penalties ........ 12

VIII. Reporting ........ 12

IX. Cost and Attorneys' Fees ........ 13

X. Releases and Covenants ........ 14

XI. Dispute Resolution ........ 14

XII. Termination ........ 15

XIII. General Provisions ........ 15

WHEREAS, on April 7, 1997, PRCA filed a complaint in the United States District Court for the District of Puerto Rico, captioned *Puerto Rico Camper's Ass'n, Inc. et al v. PRASA*, Civil Action 97-1493 (HL), alleging that PRASA had violated the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and certain terms and conditions of PRASA's National Pollutant Discharge Elimination System Permit PR0024538 (Palmer Permit).

WHEREAS, the parties have entered into discovery.

WHEREAS, the Parties mutually desire to settle and fully and finally to compromise all claims related to the action identified above in order to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of these claims.

### I. JURISDICTION

1. This Court has jurisdiction of the subject matter and over the parties to this action pursuant to 33 U.S.C. §§ 1365(a). Defendant consents to and does not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree. Venue is proper in this judicial district under 33 U.S.C. § 1365(c)(1).

### II. PARTIES BOUND

2. The Parties to this Consent Decree are as follows:

A. PRCA, being the Plaintiff Puerto Rico Campers Association, is a non-for-profit membership corporation organized under the laws of Puerto Rico;

B. PRASA, being Defendant Puerto Rico Aqueduct and Sewer Authority, a public corporation created by legislative enactment and existing under the Laws of Puerto Rico, P.R. Annotated Title 22, § 141, *et seq.*, as amended, to administer the aqueduct and sewer system of Puerto Rico.

### III. APPLICATION AND BINDING EFFECT

3. The provisions of this Consent Decree shall apply to, inure to the benefit of, and be binding upon PRCA and PRASA, its officers, directors, agents, employees, contractors, subcontractors, successors and assigns. The undersigned representatives of PRCA and PRASA certify that they are fully authorized to enter into this Consent Decree and to execute and to bind legally each signatory to this Consent Decree.

4. Parties acknowledge and agree that the Consent Decree effects a settlement of disputed matters and that nothing in this Consent Decree constitutes evidence of an admission by any person or entity and shall not be construed to be an admission by any person or entity with respect to any liability or any issue of law or fact.

5. This Consent Decree shall apply to and release the Defendant as set forth in Paragraphs 32 and 33. PRASA shall give written notice of this Consent Decree to any successor-in-interest to the Palmer Plant before transferring ownership or operation of the Plant to such successor, and shall simultaneously inform PRCA that such notice has been given.

### IV. DEFINITIONS

6. Unless otherwise defined herein, the terms used in this Consent Decree will have the meaning given to those terms in the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* and the regulations promulgated thereunder. The following terms used in this Consent Decree will be defined as follows:

   A. The term "Complaint" shall mean the complaint filed by PRCA in the action captioned *Puerto Rico Campers Association v. Puerto Rico Aqueduct and Sewer Authority*, Civ. No. 97-1493 (JAG/GAG).

   B. The term "Consent Decree" shall mean this Consent Decree.

   C. The term "date of entry" shall mean the date on which this Consent Decree is approved and signed by the Judge for the United States District Court for the District of Puerto Rico.

   D. Unless otherwise indicated, the term "day" or "days" as used herein shall mean a calendar day or days. In computing any period of time under this Consent Decree, if the last day would fall on a Saturday, Sunday or Federal or Commonwealth holiday, the period shall continue until the next day other than a Saturday, Sunday, or holiday.

E. Unless otherwise indicated, the term "EPA Action" shall mean the action filed by the United States in the case captioned *United States v. PRASA*, Civ. Action 78-0038 (CC) and 83-0105(CC).

F. "Infiltration/inflow (I/I) study" means a study of the sanitary sewer collection system for the Luquillo plant. The study will use smoke testing and other investigative techniques as needed to determine locations of readily removable inflow and infiltration into the collection system. As used in this paragraph, "infiltration" means the water entering a sewer system and service connections from the ground, through means including, but not limited to, defective pipes and sewer walls, pipe and sewer joints, connections, and manhole walls. "Inflow" means the water discharged into a sewer system, including service connections, from sources including, but not limited to, roof leaders, cellars, yard and area drains, foundation drains, cooling water discharges, drains from springs and swampy areas, manhole covers, cross connections from storm sewers and combined sewers, catch basins, storm waters, surface runoff, street wash waters, and drainage.

G. Unless otherwise indicated, the term "NPDES Permit" or "Permit" as used herein shall mean the National Pollutant Discharge Elimination System permits issued to PRASA.

H. The term "submit," in regard to documents required to be submitted pursuant to this Consent Decree, shall mean the date the document is placed in express mail, certified mail, and/or express courier service, unless otherwise specifically stated.

## V.   REQUIREMENTS

*Flow*

7. Within 30 days after entry of the Consent Decree, PRASA will certify that the flow meters at the Palmer and Luquillo plants are operational and capable of accurately measuring the effluent from those plants, including flow extracted to the Westin Rio Mar golf course lagoon. If the meters are not operational and so capable, they will be replaced or made operational within 60 days after the entry of the settlement agreement. PRASA will service and calibrate all flow meters at least twice a year or more frequently if required.

8. Nine months after the entry of this Consent Decree, PRASA will demonstrate that the Luquillo NPDES permit daily maximum flow limitation has not been exceeded more than nine times in the preceding three consecutive months (months 6, 7 and 8), and not more than five times in any one of those three months. If the number of daily maximum flow exceedances is greater than either of these amounts, then within nine months thereafter (month 18) PRASA will complete an inflow/infiltration (I/I) study of all sanitary sewer collection systems that are tributary to the Luquillo plant.

9. Fifteen months from the entry of this Consent Decree, if PRASA has not

undertaken an I/I study pursuant to Paragraph 8, PRASA will again demonstrate that the Luquillo NPDES permit daily maximum flow limitation has not been exceeded more than nine times in the preceding three consecutive months (months 12, 13 and 14), and not more than five times in any one of those three months. If the number of daily maximum flow exceedances is greater than either of these amounts, then within nine months thereafter (month 24) PRASA will complete an I/I study of all sanitary sewer collection systems that are tributary to the Luquillo plant.

10. If PRASA has not undertaken an I/I study pursuant to Paragraphs 8 or 9 after fifteen months, PRASA will repeat the demonstration described in those paragraphs every three months thereafter (starting at month 18) and, if the demonstration is unsuccessful, will complete the I/I study described in those paragraphs nine months thereafter.

11. If PRASA is required to complete an I/I study pursuant to Paragraphs 8, 9, or 10, PRASA will not authorize new sewer service connections, or increases in permitted flow from existing sewer service connections, other than those identified in Appendix A, to the Palmer or Luquillo plants unless and until PRASA issues a certification by a registered professional engineer that it has removed I/I into those plants sufficient

to reduce the number of Luquillo NPDES permit daily maximum flow exceedances to three or fewer per month.

12. PRASA will, within 48 months of the date of entry of the Consent Decree resolving the EPA Action, increase the capacity at the Luquillo Plant by 1 MGD.

*Palmer Plant*

13. Within 48 months of the date of entry of the Consent Decree in the EPA Action, PRASA will (a) cease operations at the Palmer Plant, (b) obtain authorization to incorporate Palmer into the Luquillo NPDES permit, or (c) discharge pursuant to and in compliance with the Palmer NPDES permit.

*Short Term and Long Term Remedial Actions at Luquillo Plant*

14. PRASA agrees to make the following short term and long term remedial actions that will allow PRASA to comply with the 1.18 mg/l phosphorus and the 0.5 mg/l residual chlorine NPDES permit limits:

    A. Within 12 months of the date of entry of the Consent Decree in the EPA Action, PRASA will undertake the following activities at the Luquillo Plant:

        1) level weirs of final clarifiers number 1 and 2;

2) repair two degritters;

3) install a ventilation system in the wet well;

4) repair sludge recirculation pump number 2;

5) repair the mixer of the anaerobic digester;

6) repair the scum collector of primary clarifier number 1;

7) repair the chlorine contact chamber valve;

8) repair transmission of the primary clarifier number 2; and

9) replace the influent pump number 3.

B. Within six months of the date of entry of this Consent Decree, PRASA will achieve compliance with the residual chlorine limit of the Luquillo NPDES permit. If PRASA violates that limit more than one day per month for two consecutive months after that six-month period, or more than one day per month for four months over each consecutive twelve-month period after that six-month period, then PRASA will implement dechlorination at the Luquillo Plant within six months after the date of the last triggering violation (in either the two-month consecutive period or the four-month period, whichever occurs first) to achieve compliance with that limit.

C. After the date of entry of this Consent Decree, PRASA will add chemicals to reduce phosphorus at the Luquillo Plant.

D. Within 48 months of the date of entry of the Consent Decree in the EPA Action, PRASA will retrofit the Luquillo plant for nutrient removal sufficient to meet the then-existing permit limits.

*Sampling*

15. PRASA will sample as required by the Luquillo NPDES permit.

16. Plaintiff is entitled to have a representative present at the sampling described in Paragraph 15 and to obtain a split sample. However, Plaintiff's representative may not interfere with the sampling and must comply with all of PRASA's health and safety requirements.

### VI. ENFORCEMENT

17. PRASA will negotiate with the United States EPA to release the Luquillo Plant from its ongoing enforcement action. If United States EPA releases the Luquillo Plant from its enforcement action, or fails to conclude that action during the term of this Decree, PRCA is entitled to enforce this entire consent Decree.

18. If the Luquillo Plant is not released from the United States EPA enforcement action pursuant to Paragraph 17, then PRASA will negotiate

the terms of its consent decree with the United States EPA to ensure that the provisions in the PRASA/EPA consent decree relating to the Luquillo Plant incorporate the requirements set forth in paragraphs 8-12, 14, 15, and 16 and the portions of paragraph 7 that relate to the Luquillo Plant. PRCA will retain the enforcement abilities of Paragraphs 8, 13, 14.B, and the portions of paragraphs 7, 25 and 26 that relate to the Palmer Plant. In any event, PRCA will also be entitled to enforce paragraphs 27-31 of this Decree.

### VI. FORCE MAJEURE

19. Force majeure, for purposes of this Decree, is defined as any event arising from causes beyond the control of PRASA which delays or may delay the achievement of any provision of this Decree.

20. If any event occurs which may constitute force majeure under this Decree, PRASA shall notify PRCA, through its counsel, in writing, within ten (10) business days after knowledge of such occurrence, of the delay or anticipated delay or non-compliance, as appropriate. The notice shall describe the anticipated length of time the delay or non-compliance may persist, precise cause or causes of the delay or non-compliance, the measures taken or to be taken by PRASA to prevent or minimize the delay or non-compliance, and the timetable by which PRASA will

implement those measures. PRASA shall adopt all reasonable measures to avoid or minimize such delay or non-compliance. Failure by PRASA without just cause to comply with the notice requirements of this paragraph shall render this force majeure provision void and of no effect as to the particular incident involved.

21. If PRCA and PRASA agree that the delay or non-compliance has been or will be caused by force majeure, and that PRASA could not have reasonably foreseen and prevented such delay, PRCA and PRASA will jointly notify the Court that performance of such requirement, as well as any other related requirements, will be extended or excused by a period not to exceed the actual delay resulting from such force majeure. In the foregoing case, stipulated payments for the exceedances or other noncompliance related to such delay shall be waived. In the event PRASA and PRCA are unable to agree whether the event constitutes force majeure, the matter may be submitted by any party to the court for resolution. If the court finds that the events causing such delay are not force majeure, failure to comply with the provisions of this Decree shall not be excused as herein provided and shall constitute a breach of the Decree's requirements.

22. The burden of proving that any delay is caused by force majeure and the

length of such delay attributable to such force majeure shall rest with PRASA.

23. Economic hardship or increases in the costs or expenses incurred in fulfilling the requirements contained herein shall not be basis for an extension of time.

24. Delay in an interim requirement shall not justify or excuse delay in the attainment of subsequent requirements, unless the delay in the subsequent requirement was caused or certain to be caused by the delay in the interim requirement.

### VII. STIPULATED PENALTIES

25. If PRASA fails to comply with any deliverable of this Consent Decree within the timeframes therein established, the following stipulated payments will apply:

    | | |
    |---|---|
    | 1st to 180th day | $50 |
    | 181st to 365th day | $100 |
    | Each day in excess of 365 | $200 |

26. Any stipulated penalties incurred by PRASA shall be paid by certified check, bank check, or money order made payable to the "Treasurer of the United States" within thirty (30) after submitting the progress reports required under this Agreement.

## VIII. REPORTING

27. Upon entry and continuing until termination, PRASA shall provide to PRCA triannual progress reports detailing the status of each action required under this Agreement. The progress reports shall be due no later than May 30 for the reporting period covering the months of January to April; October 30 for the reporting period covering the months of May to September and January 30 for the reporting period covering the months of September to December.

28. The progress reports shall inform on current status and/or progress of the activities undertaken pursuant to this Consent Decree, including the actions taken, amount of flow removed, and certifications obtained pursuant to Paragraph 11, any delays and problems encountered, steps taken to overcome problems and anticipated dates by which steps will be taken. A copy of the Discharge Monitoring Reports (DMRs), daily flow data and any flow meter calibration for the Palmer and Luquillo Plants shall be included with the progress reports for the months covered by each report.

29. PRASA will provide copies of the original documentation of the sampling and laboratory analysis performed pursuant to Paragraph 15 above to PRCA within five days after receipt.

30. In addition, each progress report shall provide an accounting of any applicable stipulated penalties incurred, setting forth the computations made in determining the stipulated penalty.

### IX.    COST AND ATTORNEYS' FEES

31. PRASA will make a single payment of $125,000 to PRCA to be used by PRCA for reasonable costs and attorney fees incurred in this action. Payment shall be by corporate or bank check made payable jointly to, or to the order of, Cindy Ginés Sánchez, Esq. and Puerto Rico Camper's Association, Inc. within forty-five days after entry of this Consent Decree.

### X.    RELEASES AND COVENANTS

32. PRCA will release and discharge PRASA and any of its successors, employees, and agents from all actions, claims and demands whatsoever, in law or equity, which PRCA has asserted, or could have asserted, against PRASA or any of its successors, employees or agents for, upon, or by reason of any act or transaction alleged in the action or which is related to any act or transaction alleged in the action up to the date of entry of the Consent Decree.

33. This Consent Decree shall be binding on the Parties, their successors, assigns and heirs.

## XI. Dispute Resolution

34. The parties shall make reasonable efforts informally and in good faith to resolve all disputes or differences of opinion regarding the meaning or implementation of this Consent Decree.

35. If in the opinion of any party there is a dispute with respect to the meaning or implementation of any provision of this Consent Decree, that party shall send a written notice to the other party which outlines the nature of the dispute and requests informal negotiations to resolve the dispute. Such period of informal negotiations shall not extend beyond one hundred twenty (120) days from the date when the notice was sent unless the parties agree otherwise.

36. A record of the dispute shall be maintained by the parties and shall contain all statements of position, including supporting documentation, submitted by either party.

## XII. Termination

37. This Consent Decree will terminate 54 months after the date of entry.

## XIII. General Provisions

38. This Consent Decree shall be governed by the law of Puerto Rico.

39. This Consent Decree may not be amended or otherwise modified, except

in writing signed by PRCA and PRASA.

40. The effective date of this Consent Decree shall be the date of entry.

41. The Court shall retain jurisdiction of this matter until termination of the Consent Decree.

So Ordered this 26th day of April, 2004

_____
United States District Judge

For the Plaintiff Puerto Rico Campers Association

_____          3/23/04
Cindy Ginés Sánchez, Esq.                Date
Counsel for Plaintiff
Pablo Maíz 5
Mayagüez, Puerto Rico 00680

_____          3/23/04
Yvonne Dennis                            Date
Plaintiff's Representative
and Past President

For the Defendant Puerto Rico Aqueduct and Sewer Authority

_____
Mr. Juan Agosto Alicea
Executive President

Dated: 4/6/04

Dated: April 6, 2004

_____
Jorge Marrero Narváez, Esq.
Office of General Counsel
Puerto Rico Aqueduct and Sewer Authority
Sergio Cuevas Bustamente Building
604 Avenida Barbosa - 7th floor
Hato Rey, Puerto Rico   00917
787-620-2277 x2668